UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ruth Olson,

        Plaintiff,

v.                                           Case No. 17-cv-4423 (JNE/SER)
                                               **ORDER**

Messerli & Kramer, P.A.,

        Defendant.

---

Blake Bauer, Fields Law Firm, appeared for Ruth Olson.

Derrick N. Weber and Stephanie Shawn Lamphere, Messerli & Kramer, P.A., appeared for Messerli & Kramer, P.A.

---

Ruth Olson brought this action against Messerli & Kramer, P.A. ("Messerli") for violations of the Fair Debt Collection Practices Act ("FDCPA"). Messerli moved to dismiss Olson's complaint. For the reasons set forth below, that motion is granted.

## BACKGROUND

Sometime prior to December 2016, Olson defaulted on a debt to Barclays Bank in the amount of $917.05. That debt was assigned to Midland Funding for collection. Midland then hired Messerli to assist in the collection of the alleged debt, which stood at $999.05.

On May 19, 2017, Olson called Messerli. Olson told the Messerli phone representative that she was calling "to get more information" about her alleged debt and

1

to ask about her upcoming conciliation court trial in Washington County. Compl. ¶ 12; ECF No. 1-1 at 5. She also mentioned "trying to work out a settlement." ECF No. 1-1 at 5. According to a transcript of that call attached to Olson's complaint, the representative's response and the ensuing exchanges were as follows:

> MESSERLI REP: OK, I'll be able to assist you with that. The hearing is set for June 8, 2017 at 9:00, where the judgment will be entered, if it's not paid in full, and if you were to pay it in full today, the hearing cannot be stopped, however, what they would do is order the judgment and show that it was paid. Um, satisfied. So, um, are you able to pay the full $999.05?
>
> OLSON: No, no I'm not, so that's why I was calling, to get the documentation, for one, to show, you know, why I owe this $917, and what is this settlement agreement…
>
> REP: We don't do settlements on those balances. It is a payment in full, but let me see what I can…
>
> OLSON: Jupiter? Credit card? Jupiter?
>
> REP: Mmhmm. Let me see if I can offer you more. We are limited, so um, I can tell you that it was opened on August 7, 2009. The last time a payment was made was February 28, 2014, in the amount of $20.00, and it was charged off to our clients on October 30, 2014 for the $917.05. And then our client retained us, and placed it with us, on 12/5/2016. The $82 additional cost is because we have requested a hearing. They charge us, so that goes back on to your balance. And when we get charged, it automatically goes on to your balance.
>
> OLSON: OK, so you say there is no settlement agreement, because that's what they sent me in the mail, they told me that this is what, you know, before, something that I need to pursue.
>
> REP: What we can do, an option, um that is available to you, it is our firm's policy, anything other than a payment in full, we have to go through a brief

>financial statement, basically what I would be asking you is your income versus your expenses, and then we can determine what a monthly repayment option would be.
>
>OLSON: OK, well I just wanted to check in with you and get this information before I get back to my attorney. I appreciate your time.
>
>REP: Thank you for calling in this morning, Ruth.
>
>OLSON: Yup, thank you. Good bye.

ECF No. 1-1 at 5-6.

Later in the day on May 19, 2017, Olson retained Blake Bauer as her attorney for an FDCPA case against Midland and Messerli. Bauer was already Olson's attorney "for other matters of indebtedness." ECF No. 1-1 at 8. In a letter dated May 19, 2017, Bauer informed Midland that he was now representing Olson in an anticipated action against Midland and Messerli for alleged FDCPA violations.[1]

Olson's conciliation court proceeding was held on June 8, 2017. Prior to the start of the hearing itself, Olson met with a Messerli attorney to work out the terms of a voluntary payment arrangement. The arrangement called for Olson to make monthly payments of $50.00, beginning on July 31, 2017, until $900.00 had been paid. Alternatively, Olson could pay a lump sum of $700.00 by September 30, 2017. The parties then signed a Stipulation of Settlement codifying the agreed-upon terms. The settlement agreement also stated: "The parties desire to fully and permanently settle, discharge and release any and all claims that they may have against each other and/or

---

[1] Bauer's May 19, 2017 letter to Midland suggests (apparently in error) that the Olson-Messerli call took place on May 17, 2017.

counsel pursuant to the terms contained herein." ECF No. 1-1 at 10. Bauer did not attend the hearing.

Olson filed this action on September 20, 2017, alleging that Messerli violated five sections of the FDCPA:

- 15 U.S.C. §§ 1692e(2), 1692e *preface*, and 1692e(10) for giving a false impression of the character and legal status of the alleged debt, and for using false, misleading, and deceptive means to collect the alleged debt;

- 15 U.S.C. § 1692e(5) for taking or threatening to take action they could not legally take or did not intend to take; and

- 15 U.S.C. § 1692c(a)(2) for attempting to negotiate and waive their FDCPA liability directly with Olson when they knew her to be represented by an attorney regarding her FDCPA claims.

Olson seeks damages based on both emotional suffering and expenses, including attorney's fees.

## LEGAL STANDARD

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555 (1955)). Plausibility is assessed by "draw[ing] on . . . judicial experience and common sense." *Id*. at 679, 129 S.Ct. 1937. Moreover, courts must "review the plausibility of the

plaintiff's claim as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010).

The FDCPA's purpose is "to eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e); *see also Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 318-19 (8th Cir. 2004). The FDCPA should be construed using an unsophisticated consumer standard that is "designed to protect consumers of below average sophistication or intelligence without having the standard tied to the very last rung on the sophistication ladder." *Duffy v. Landberg*, 215 F.3d 871, 874 (8th Cir. 2000) (quoting *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997)); *see also Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001) (indicating that the unsophisticated consumer standard applies to 15 U.S.C. §§ 1692d–1692f). Crucially, "[t]his standard protects the uninformed or naive consumer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collections letters." *Duffy*, 215 F.3d at 874-75.

## DISCUSSION

Messerli makes two arguments in favor of dismissal. The first is that Olson waived her right to sue under the FDCPA when she signed the settlement agreement in conciliation court. And second, even if Olson did not waive her right to sue, Messerli's actions do not represent violations of the FDCPA. The Court need not reach the second of these arguments because Olson clearly waived her right to sue under the FDCPA.

As noted above, the agreement that Olson signed on June 8, 2017 contains the following provision:

> The parties desire to fully and permanently settle, discharge and release any and all claims that they may have against each other and/or counsel pursuant to the terms contained herein.

Messerli contends that pursuant to this provision, Olson waived her right to sue Messerli (as Midland's counsel) under the FDCPA. Olson counters that (a) the provision is ambiguous as to whether it covers Olson's FDCPA claim, making Rule 12 dismissal inappropriate, and (b) Olson did not sign the provision knowingly, rendering the waiver invalid. Both of these arguments are unsuccessful. The waiver is valid.

### A. Ambiguity

Under Minnesota law, "a settlement agreement is a contract," *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 581 (Minn. 2010), and a contract is only ambiguous "if it is susceptible to two or more reasonable interpretations." *Id.* at 582. Olson contends that the release provision is ambiguous as to whether FDCPA claims are covered. She makes three arguments in support of this position.

Olson first contends that the phrase "terms contained herein" limits the scope of the release such that only those claims involving Olson's payment of her debt – and not Midland's or Messerli's debt collection practices – are covered. Compl. ¶ 17. Olson does not adequately explain how this phrase limits the release in this way, nor is an explanation self-evident. The release provision clearly states that the release of the parties' claims will be made "pursuant to the terms contained herein" – i.e., pursuant to the terms of the settlement agreement, under which Olson pays on a monthly basis or

6

makes a lump-sum payment at a reduced amount. ECF No. 1-1 at 10. The phrase "terms contained herein" does not create the ambiguity that Olson suggests.

Olson also argues that "any and all claims" does not include her FDCPA claims or any other future claims. Compl. ¶ 18. But "any and all claims" is broad and unambiguous language. *See Marvin Lumber & Cedar Co. v. Marvin Architectural Ltd.*, 217 F.Supp.3d 1009, 1014 (D. Minn. 2016). Moreover, the provision covers all claims that the parties "*may have* against each other" (emphasis added), not just those that they *now* have. Therefore, the language used by the parties clearly and unambiguously shows that they intended the release to be broad enough to include possible FDCPA claims.

Lastly, Olson contends that the agreement is ambiguous because there was no bargained-for exchange between Olson and Messerli. Once again, Olson does not explicate this position, leaving unclear how exactly an alleged lack of consideration could create an ambiguity in the agreement. But whatever the theory, the fact that Messerli was not a first party to the agreement does not nullify the release provision. *See First State Bank v. McNally,* 2002 WL 31749164, at *6 (Minn. Ct. App. Dec. 10, 2002). Midland's clear intent was to protect its counsel from suit, and the extent to which Messerli and Olson had or did not have a separate, bargained-for exchange does not have any bearing on that intended result.

In sum, the agreement was not ambiguous. The parties clearly intended to release each other from any and all claims that they might have in relation to the Olson debt. This broad release included Olson's FDCPA claims.

**B. Knowing and Voluntary**

Olson next argues that even if the waiver is unambiguous, it is unenforceable because she did not sign it knowingly. Specifically, Olson asserts that because she "never consented to negotiate her FDCPA claims against Messerli," and because those claims were not discussed at the June 8 pre-hearing meeting, she could not know that she was waiving her rights under the FDCPA. Pl.'s Mem. Opp'n at 15.

The Eighth Circuit Court of Appeals has not yet addressed whether debtors can waive their rights under the FDCPA. However, the Ninth Circuit has held that FDCPA waivers are enforceable when they are made knowingly and voluntarily. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1170-71 (9th Cir. 2006). In *Clark*, the court held that a debtor's request for information from a debt collector's attorney constituted a waiver of her right under § 1692c(c) of the FDCPA not to be contacted by debt collectors. The *Clark* court explained that, in keeping with the purpose of the FDCPA, such a waiver is enforceable "only where the least sophisticated debtor would understand that he or she was waiving his or her rights under § 1692c(c)." *Id.* at 1171. Several district courts, including two in this district, have adopted the *Clark* knowing-and-voluntary standard in finding FDCPA waivers enforceable. *See Scheffler v. Gurstel Chargo, P.A.*, 2017 WL 1401278, at *3 (D. Minn. Apr. 19, 2017); *Backlund v. Messerli & Kramer, P.A.*, 964 F.Supp.2d 1010, 1015 (D. Minn. 2013).

Measured against this standard, Olson's waiver is enforceable. Olson herself acknowledges that Bauer "advised [her] of her rights under the FDCPA." Mem. in Opp'n at 11. This suggests that she knew more than the typical "unsophisticated consumer"

8

would know about the consequences of her decision to release Messerli from FDCPA liability. But even a truly unsophisticated consumer – i.e., one who had *not* been advised by an attorney – would have understood the effect of signing a settlement agreement covering "any and all claims." Therefore, whether Olson was in fact advised as to her FDCPA rights or not, her signing of the agreement was knowing and voluntary, and the release is therefore valid.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's motion to dismiss [ECF No. 9] is GRANTED.
2. Plaintiff's complaint [ECF No. 1] is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 12, 2018                     **s/ Joan N. Ericksen**
                                             JOAN N. ERICKSEN
                                             United States District Judge